NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

```
_____ :
                               :
BERNICE C. WRIGHT,             :
                               :
            Plaintiff,         :    Civil No. 05-2652 (RBK)
                               :
       v.                      :    OPINION
                               :
COMMISSIONER OF SOCIAL         :
SECURITY ADMINISTRATION,       :
                               :
            Defendant.         :
_____ :
```

**KUGLER,** United States District Judge:

This matter comes before the court upon appeal by Plaintiff Bernice Wright ("Wright"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner will be vacated and remanded.

## I.   Background

Wright, a fifty-two year old woman with a college education, applied for DIB on October 26, 2001, alleging that she became disabled on March 15, 1999, when she stopped working to have a partial mastectomy to remove a cancerous lump from her right breast. She claims that she is unable to resume working due to an array of physical ailments, including pain in her back, leg, and

shoulder, diabetes mellitus, breast and endometrial cancer, carpal tunnel syndrome, and sleep apnea.

Although Wright has a college degree in accounting, her most recent work was as a part time union clerk, performing hazmat and rewrap duties, for United Parcel Service ("UPS") for approximately thirty hours per week. As a hazmat clerk, Wright loaded and unloaded trucks and cleaned spilled materials. (Rec. at 73, 447-51.) As a rewrap clerk, Wright rewrapped damaged packages, lifting and moving objects weighing up to seventy pounds without assistance. (Rec. at 454.) Wright's only other past relevant work consists of occasional employment as a substitute elementary school teacher from approximately 1991 until 1995.

## A.    Breast and Shoulder Pain

Wright was diagnosed with cancer in her right breast and underwent a partial mastectomy and axillary node dissection in March 17, 1999, to remove the lump. (Rec. 172-73, 233; see generally Rec. 125-59.) She alleges significant pain in her right breast and shoulder since the surgery. A letter dated July 25, 2000, from Plaintiff's breast surgeon, Dr. Sarah S. Schaefer, confirms that Wright visited her office several times, complaining of pain in her right breast and the right shoulder axillary region. In particular, Wright visited the office in April 2000, to address right shoulder pain for which she was

prescribed Vioxx and Flexeril. Wright again visited the office on July 24, 2000, complaining of right breast pain. Dr. Schaefer noted that Wright had evidently "totally forgotten about the right shoulder pain." (Rec. 230.) Dr. Schaefer observed that the right breast pain is "along the medial side, not in any of the surgical areas," and stated that she could "find no pathological cause of her tenderness," but that there may be "an emotional component." (Rec. 230-231.)

In a second letter of November 21, 2001, Dr. Schaefer advised that "[w]ith axillary node dissections, because of the risk of lymphedema, patients are told that they need to restrict their activities and try to not lift more than 10 lbs with that arm." (Rec. 228.) Dr. Schaefer also noted that Wright has complained of right-sided arm pain and right shoulder pain since her surgery, but she has not determined whether this pain was from the surgery or some other musculo-skeletal issue." (Rec. 229.)

## B.   Back and Knee Pain

According to the medical history given by Wright to her doctors, it appears that Wright injured her back at work in 1998, but sought no treatment for that injury. (Rec. 255.) Wright's medical records also indicate that she suffers from some form of degenerative bone or joint disease in her knees and back.

A bone scintigraphy performed on April 14, 1999, revealed

increased activity at the sternomanubrial joints and at both patellae, which the doctor felt to be degenerative. (Rec. 152.) An examination at St. Barnabas Imaging Center on March 7, 2000, revealed "[d]egenerative changes in the dorsal spine," (Rec. 372), and a bone scan on November 2, 2000, revealed "[i]ncreased uptake in the right shoulder, left sternoclavicular joint, knees, and feet, which are most likely degenerative." (Rec. 144, 370.) Another bone scan on April 17, 2001, indicated that "[d]egenerative changes in the knees have progressed as has apparently degenerative change in the lower lumbar spine." (Rec. 140.)

Wright received lumbar epidurals with fluoroscopy in August 2001 at St. Barnabus Medical Center to address her back pain. (Rec. 197-219.) Records from a follow-up visit at Saint Barnabas Cancer Center on January 7, 2002, provide that Wright continued to have leg pain, linked to her disc disease. (Rec. 340.)

Wright had an initial consultation with Dr. Diane G. Portman on February 13, 2002, to conduct a pain management evaluation for her left low back pain and right leg pain. Dr. Portman noted that Wright has a chronic history of low back pain since 1998 and left leg pain since 2000. (Rec. 251.) Wright described the back pain as moderate to severe in intensity, radiating "to her entire thigh and enterolateral knee and calf to the dorsal foot. The pain is characterized as constant and aching." (Rec. 251.) Dr.

Portman also notes that the pain is "exacerbated by activity, prolonged walking, standing, lying on the back," and that Wright has been treated with physical therapy. (Rec. 251.) Dr. Portman observed that an MRI on April 17, 2001, revealed "disc degeneration at L5-S1 with annular bulge and superimposed left-sided protrusion," and concluded that Wright suffers from lumbar radiculopathy and lumbar herniated nucleus pulposus. (Rec. 251, 252.) Dr. Portman recommended epidural steroid injections with fluoroscopic guidance to treat Wright's pain.

Wright visited Dr. Arthur I. Marks on February 25, 2002, for an orthopedic consultative evaluation. Dr. Marks noted that Wright complains of back pain that is "bothersome when she is supine" and is "also aggravated by sitting and standing." (Rec. 255.) Wright complained of tingling and paresthesias in her right leg and foot and clicking in right knee and pain during "twisting maneuvers and occasionally when walking stairs." (Rec. 255, 256.) Dr. Marks' ultimate assessment was "low back pain syndrome without objective findings on physical examination." (Rec. 258.) He also observes that her MRI was negative for her knee and that, over all, most of his examination was negative for objective symptoms. (Rec. 257.)

A letter by Dr. Judith Adams on July 15, 2002, indicates that a more recent MRI of Wright's knee did reveal degenerative joint disease. (Rec. 263.) Dr. Adams determined that Wright's

"back pain clearly is due to degenerative joint disease, made worse by her obesity." (Rec. 264.) She observed that Wright favors her right leg, has full range of motion in her shoulders, and has a minor decrease of range of motion in her right elbow due to pain. (Rec. 264-65.) Dr. Adams diagnosed Wright with "severe back pain and right leg pain which is probably secondary to degenerative joint disease . . . degenerative joint disease of her right knee, lateral epicondylitis of her right elbow, [and] chronic fatigue due to sleep apnea," and recommended a psychological evaluation. (Rec. 266.)

Dr. J.R. Michel reviewed Wright's medical records and conducted a residual functional capacity ("RFC") assessment in August 22, 2002. Dr. Michel concluded that Wright could occasionally lift up to 20 pounds, frequently lift ten pounds, and sit or stand/walk about six hours in an eight hour work day. (Rec. 274.) Dr. Michel found that "the severity of symptoms . . . is positively disproportionate to the expected severity," and "the severity of symptoms . . . is not consistent . . . with the total medical evidence." (Rec. 278.)

In an undated RFC assessment, performed some time after Wright's most recent exam of October 3, 2002, Dr. Joseph Hickey reported that Wright could lift twenty pounds occasionally and ten pounds frequently, could stand and/or walk for not more than six hours, and was not limited in her sitting. (Rec. 284.) In a

letter dated March 13, 2003, Dr. Hickey further asserted that Plaintiff suffers from "[c]hronic pain in the legs and back as well as numbness of the feet. She also is easily fatigued as a result of sleep apnea and suffers from significant daytime sedation." (Rec. 300.) He observed that "[s]he does not do a lot of walking or prolonged standing because of pain in her legs and back," and concluded, "I certainly concur that her ability to become gainfully employed again is unlikely." (Rec. 300.) A later medical report by Dr. Hickey, dated September 11, 2003, reports that Wright had been experiencing shoulder and neck pain for two weeks. (Rec. 310.)

Dr. Jamil Mohsin reviewed x-rays of Wright's knees on May 4, 2004, noting that "[m]ild to moderate degenerative changes are seen involving the bilateral knees with small osteophyte formation. There is no joint effusion." Dr. Mohsin's impression was, "[m]ild to moderate DJD bilaterally, right greater than left side." (Rec. 303.)

**C.  Sleep Apnea**

The record also indicates that Wright suffers from chronic fatigue due to sleep apnea, confirmed by a sleep study conducted in or around June 2002, which revealed obstructive sleep apnea syndrome. (Rec. 261.) She uses a continuous positive airway pressure ("CPAP") machine to assist her breathing, however, as of June 30, 2002, she had not been using the machine consistently

because "she cannot watch TV while using it, and often she snaps
it off during the middle of the night." (Rec. 261.) Dr. Jeffrey
Nahmias further reported that Wright is now utilizing a nasal
CPAP on a nightly basis, but that "[i]t remains to be seen how
her response to CPAP will be at this present time." (Rec. 262.)
Dr. Nahmias continued, "Until her response is deemed adequate,
she remains disabled from her severe daytime sleepiness, unable
to perform work." (Rec. 262.) In a follow-up report on August 26,
2002, Dr. Nahmias noted that Wright "has been on CPAP and has
been doing fairly well," however he also found that "[h]opefully
again with weight loss, she will be able to improve, but right
now, she still has significant sleep apnea." (Rec. 299.)

**D.   Other Physical Ailments**

Wright's medical history reveals other medical problems,
including diabetes mellitus and hypertension, (Rec. 282), deep
vein thrombosis with no need for treatment, (Rec. 127, 142, 257),
and uterus carcinoma, for which she underwent a hysterectomy
around November 25, 2002, (Rec. 294). Wright also has a history
of carpal tunnel syndrome, treated with reconstructive surgery on
her arms in 1995 and 1998. The record contains no medical
documentation indicating that the condition has persisted. (Rec.
256.) In the same vein, Wright was diagnosed with left lateral
epicondylitis (tennis elbow) by Dr. Marcellow Sammarone on March
1, 2001, but it is unclear whether her elbow pain persists. (Rec.

241-42.)

The record also establishes that Wright is diagnosed as obese, fluctuating between approximately 275 pounds to 312 pounds. As of February 3, 2002, Wright weighed 300 pounds and was approximately 5'3 3/4" tall. (Rec. 252.) By April 22, 2004, the date of the hearing, Wright weighed 312 pounds. (Rec. 441.) The record reveals that Wright's weight adversely affects her health and exacerbates her physical ailments, most particularly her sleep apnea and leg and back pain. (Rec. 231, 299.)

**E.    Judge Shellhamer's Opinion**

Wright filed an initial application for DIB on December 13, 1999, alleging a disability onset date of March 15, 1999. The SSA denied Plaintiff's application on June 26, 2000, and Wright did not seek review. Wright filed the present application on October 9, 2001, which was denied initially and upon reconsideration. Wright requested review and was heard before Administrative Law Judge ("ALJ") Daniel N. Shellhamer on April 22, 2004. In his opinion of June 25, 2004, Judge Shellhamer affirmed the denial of benefits, concluding that Wright was not disabled at any time from June 27, 2000,[1] through the date of the decision on June 25,

---

[1] Because the DIB application at issue is Wright's second application for benefits, and because the present application alleges the same impairments as Wright's initial application of March 15, 1999, Judge Shellhamer determined that res judicata principles preclude the readjudication of whether Wright was disabled prior to the date of the previous SSA determination on June 26, 2000.

2004.

In particular, Judge Shellhamer found that Wright suffered from "degenerative arthritis, osteoarthrosis [sic], sleep apnea, diabetes and hypertension," and concluded that these "impairments impose 'significant' work-related limitations" and constitute a "severe impairment." (Rec. 19.) He also found that there was no evidence in the record that Wright's diabetes mellitus or hypertension impose significant limitations. (Rec. 23.) He then concluded that Wright's conditions do not constitute a listed impairment. (Rec. 19.)

In assessing Wright's RFC, Judge Shellhamer found that Wright could "lift and carry up to twenty pounds occasionally and ten pounds frequently and sit, stand, and/or walk for about six hours in an eight hour workday." (Rec. 23.) Judge Shellhamer determined that "claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision" and found her statements "non-persuasive to establish 'disability.'" (Rec. 24, 22.) The Judge concluded that this RFC would permit Wright to "return to her past relevant work as a substitute teacher or as a 'standing clerk' for UPS . . . as she performed them." (Rec. 23.)

## II.  Standard of Review

District Court review of the Commissioner's final decision

10

is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 301, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's

decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

## III. Discussion

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments

12

which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner evaluates whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues on to step four to evaluate the claimant's RFC and determine whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

Wright argues that the ALJ erred in (1) dismissing Wright's testimony of pain as lacking credibility, (2) determining that Wright's condition does not amount to a listed impairment, and (3) excluding evidence in calculating Wright's RFC.

**A.   Credibility Determination**

It is well established that "where medical evidence supports a claimant's complaints of pain, the complaints should be given 'great weight' and may not be disregarded unless there exists

13

contrary medical evidence." Claussen v. Chater, 950 F. Supp. 1287, 1297 (D.N.J. 1996) (quoting Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993)). So long as there is "objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984) ("[P]ain must be considered, can be disabling in itself, and is often not subject to strict objective medical proof.").

However, before weighing the claimant's testimony, the ALJ must evaluate the claimant's credibility and "determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Bembery v. Barnhart, 142 Fed. Appx. 588, 591 (3d Cir. 2005) (citing Hartranft v. Apfel, 181 F. 3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). To assess credibility, the ALJ may consider: "(1) daily activities; (2) duration, location, frequency, and intensity of the pain and other symptoms; (3) precipitating and aggravating factors; (4) medication taken to alleviate pain or other symptoms; (5) treatment other than medication; (6) any other measures used to relieve the symptoms; and (7) other factors concerning functional limitations or limitations due to pain or other symptoms." Caruso v. Commissioner of Social Sec., 99 Fed. Appx. 376, 380-81 (3d Cir. 2004) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vii)); Bembery v.

14

Barnhart, 142 Fed. Appx. 588, 591 (3d Cir. 2005) (affirming ALJ's credibility determination because claimant's "daily activities strongly conflict with her allegations of having totally disabling limitations and pain").

In this instance, the ALJ's findings and objective evidence, including an MRI and bone scans, establish that Wright suffers from, among other conditions, degenerative changes in her knees and spine, degenerative arthritis, osteoarthrosis, sleep apnea, diabetes, and hypertension. (Opp'n 15, Rec. 19, 144, 370, 140.) As symptoms of these conditions, Wright testified to "stabbing pain" in her leg and back, which prevents her from walking further than a block, sitting for longer than five or ten minutes, or frequently driving a car. (Rec. 442-43, 463, 445.) She testified to daily pain in her right breast, exacerbated by reaching or other use of her right shoulder and arm. (Rec. 456-567.) She also claimed residual pain from her carpal tunnel syndrome. (Rec. 459-60.)

Despite the objective evidence of Wright's medical conditions, Judge Shellhamer did not consider her testimony of subjective discomfort and disregarded the entirety of her testimony in evaluating her RFC. In support of excluding Wright's testimony from consideration, Judge Shellhamer states only that "[t]he undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in

15

the body of the decision." (Rec. 24.) However, the credibility
analysis in the body of the opinion is equally inconclusive,
ignoring the seven Caruso factors and placing inordinate weight
on a few records at the exclusion of the bulk of the medical
documentation.

> In particular, Judge Shellhamer provides:

> Ms. Wright testified that she has had low back pain and
> right lower extremity pain since 2000. However, it is
> noteworthy that the a [sic] report from Dr. Sammarone,
> dated March 1, 2001, indicates that Ms. Wright only had
> complaints of left lateral epicondylitis. (Exhibit 7F).
> Further, Dr. Marks reported on February 25, 2002, that
> Ms. Wright had been diagnosed with low back pain
> syndrome, but found no objective findings on physical
> examination to substantiate this diagnosis (Exhibit
> 9F).

(Rec. 22.) (emphasis in original).

> Judge Shellhamer further concludes that the absence of any
muscle atrophy undermines Wright's allegations of pain. In
particular, he notes:

> Dr. Portman reported on February 13, 2002, that muscle
> tone and muscle strength were normal in the lower back
> (Exhibit 8F). Findings from Dr. Adams [sic] examination
> revealed that Ms. Wright had normal muscle strength in
> her upper extremities and normal grip strength. The
> undersigned notes that signs of muscle wasting or
> atrophy are often observed when pain is severe and
> functionally limiting.

(Rec. 22.)

> However, none of these reports amount to substantial
evidence that Wright's testimony was not credible, particularly
given the ALJ's failure to take any conflicting evidence into

16

consideration. See, e.g., Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000) (holding that the judge may not simply rely on "the pieces of the examination reports that supported [his] determination," at the exclusion of other evidence).

As a preliminary matter, the report from Dr. Sammarone was written in connection with a consultation for the specific purpose of addressing Wright's elbow pain. Given the purpose of the consultation, it is difficult to ascertain how Wright's failure to mention her other conditions could establish that they therefore did not persist. In the same vein, the reliance on Dr. Marks' February 25, 2002, evaluation similarly focuses too narrowly on a specific document, emphasizing Dr. Marks' reference to a lack of "objective findings" and a negative MRI at the exclusion of other evidence. Most significantly, the ALJ does not acknowledge that an MRI taken on or around July 15, 2002-just a few months after the consultation with Dr. Marks-confirmed Wright's degenerative joint disease. (Rec. 263.)

In any event, the ALJ failed to consider the abundant evidence indicating that Wright suffered from back and lower extremity pain, both before and after her March 2001 visit to Dr. Sammarone. The record contains reports from an examination revealing "[d]egenerative changes in the dorsal spine" on March 7, 2000, (Rec. 372), treatment with lumbar epidurals in August 2001 (Rec. 197-219), an MRI of April 17, 2001, revealing "disc

17

degeneration at L5-S1 with annular bulge and superimposed left-sided protrusion," (Rec. 251), and a pain management consultation with Dr. Portman on February 13, 2002, diagnosing lumbar radiculopathy and lumbar herniated nucleus pulposus (Rec. 251-52). Judge Shellhamer makes no reference to these findings in his analysis.

Lastly, there is no basis in the record for the ALJ's conclusion that the absence of muscle wasting indicates a lack of severe pain. This reasoning is unsubstantiated and amounts to engaging "in speculation and made medical judgments on [his] own in the absence of record support, which is beyond the province of an ALJ." Oh v. Barnhart, 68 Fed. Appx. 370, 374 (3d Cir. 2003); Humphreys v. Barnhart, 127 Fed. Appx. 73, 75 (3d Cir. 2005) (noting that an ALJ may not make "speculative inferences from medical reports").

Such a perfunctory evaluation of Wright's credibility cannot justify the decision to entirely exclude Wright's testimony from consideration. The ALJ's finding that Wright's testimony of pain lacks credibility is not supported by substantial evidence and constitutes grounds for reversal.

**B. Residual Functional Capacity Determination**

Although the Court must affirm the ALJ's RFC determination if it is supported by substantial evidence, "[e]vidence is not substantial if the Commissioner failed to consider all relevant

evidence or failed to resolve conflicts created by counter-veiling evidence or overwhelmed by other evidence." Gifford v. Barnhart, 129 Fed. Appx. 704, 706 (3d Cir. 2005). Consequently, although the ALJ may "weigh medical evidence and choose between conflicting accounts," Torres v. Barnhart, 139 Fed.Appx. 411 (3d Cir. 2005) (citing Williams v. Sullivan, 970 F.2d 1178, 1187 (3d Cir. 1992)), the ALJ must actually consider all of the evidence and provide his reasons for crediting certain portions of the record over others. Oh v. Barnhart, 68 Fed. Appx. 370, 374 (3d Cir. 2003).

In this instance the ALJ's opinion is inadequate on its face. After summarizing Wright's extensive medical documentation, the ALJ gives only cursory attention to the record to determine that Wright's RFC permits her to "lift and carry up to twenty pounds occasionally and ten pounds frequently and sit, stand and/or walk for about six hours in an eight hour workday."[2] (Rec. 22-23.) In reaching this conclusion, Judge Shellhamer cites only Wright's consultative examination by Judith Adams on July 15,

_____

[2] Even given the validity of the ALJ's RFC assessment, it does not support his finding that Wright could resume her past occupations as a clerk for UPS and a substitute teacher "as she performed them." (Rec. 23.) This conclusion entirely disregards the testimony of the vocational expert, classifying Wright's work for UPS as that of a "materials handler . . . considered to be heavy by the DOT," and her own testimony that work as a clerk with UPS required lifting 70 pounds. (Rec. at 454.) The ALJ also did not address the vocational expert's comment that Wright's work as a substitute elementary teacher "is going to require more physical demands than a high school teacher." (Rec. 480-81.)

2002, Dr. Hickey's RFC report, and Dr. Nahmias' statement that Wright "was doing 'fairly well' when she is utilizing her nasal CPAP machine." (Rec. 22-23.) The ALJ failed to consider substantial portions of the record and nowhere addressed or explained documentation in conflict with his findings.

To assess Wright's RFC, Judge Shellhamer appears to depend most on Dr. Hickey's October 3, 2002, RFC report, observing that "[e]ven Dr. Hickey, the claimant's primary care physician has reported that Ms. Wright could lift and carry up to twenty pounds occasionally, stand and/or walk for up to six hours in an eight hour work day and that she had no limitations with sitting of performing repetitive push/pull activities (Exhibit 14F)." (Rec. 23.) The ALJ considers Dr. Hickey's RFC report at the exclusion of his March 13, 2003, letter, which states that Wright's "ability to become gainfully employed again is unlikely" and notes that she suffers from "[c]hronic pain in the legs and back as well as numbness of the feet . . . is easily fatigued as a result of sleep apnea . . . [and] does not do a lot of walking or prolonged standing because of pain in her legs and back." (Rec. 300.)

An ALJ may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion." Humphreys v. Barnhart, 127 Fed. Appx. 73, 75 (3d Cir.

2005). Although Judge Shellhamer does note that he assigned
"reduced weight to Dr. Hickey's opinion . . . insofar as it
appears to be inconsistent with his prior detailed residual
functional capacity assessment," he does not explain his reasons
for discounting Dr. Hickey's second opinion, while so heavily
relying on Dr. Hickey's earlier evaluation. (Rec. 21-22.)
Disregarding Dr. Hickey's later evaluation also appears
inconsistent with the degenerative nature of Wright's condition,
and conflicts with the Third Circuit's instruction to afford
substantially greater weight to written opinions than RFC form
evaluations. Claussen v. Chater, 950 F. Supp. 1287, 1296 n.10
(D.N.J. 1996) (noting that "the Third Circuit has expressed
skepticism for . . . '[f]orm reports in which a physician's
obligation is only to check a box or fill in a blank").

     Aside from noting his attribution of "reduced weight" to Dr.
Hickey's assessment, the ALJ provides no further discussions of
any conflicts between the few reports he cites and the rest of
the documentation in the record. Thus, for example, the Judge
notes Dr. Adams' findings that Wright "had a normal cervical and
thoracic spine examination," (Rec. 22), but nowhere mentions Dr.
Portman's finding of February 13, 2002, that Wright suffers from
lumbar radiculopathy and lumbar herniated nucleus pulposus, (Rec.
251, 252), or Dr. Marks' orthopedic consultative evaluation of
February 25, 2002, finding "slight decreased sensation to light

touch in all areas of the right foot and most of the right lower leg" and a reduced capacity for straight leg raising, (Rec. 257). Nor does the ALJ acknowledge Dr. Adams' findings of July 15, 2002, concluding that Wright's "back pain clearly is due to degenerative joint disease, made worse by her obesity," and diagnosing Wright with "severe back pain and right leg pain which is probably secondary to degenerative joint disease . . . degenerative joint disease of her right knee, lateral epicondylitis of her right elbow, [and] chronic fatigue due to sleep apnea." (Rec. 266.)

Similarly, in noting that Dr. Nahmias found Wright to be "doing fairly well," Judge Shellhamer ignores Dr. Nahmias's conclusion in June 30, 2002, that although Wright was then using a CPAP on a nightly basis, "[i]t remains to be seen how her response to CPAP will be at this present time," and [u]ntil her response is deemed adequate, she remains disabled from her severe daytime sleepiness, unable to perform work." (Rec. 262.) Dr. Nahmias further noted, on August 26, 2002, that Wright "still has significant sleep apnea." (Rec. 299.) See Winters v. Barnhart, 153 Fed. Appx. 846, 848 (3d Cir. 2005) (rejecting ALJ's reasoning that claimant's doctor's statement that her "condition had improved" was sufficient to ignore rest of doctor's records).

Because it appears that Judge Shellhamer did not consider the bulk of the evidence or address conflicts in the record, his

decision lacks substantial evidence. Gifford, 129 Fed. Appx. at 706.

## C.   Listed Impairment

Wright argues that the Commissioner erred in determining that her condition does not meet or equal a listed impairment. In particular, she contends that her medical records establish impairments listed under § 1.04 disorders of the spine, § 13.10 malignant neoplastic disease of the breast, § 3.00(H) sleep-related breathing disorders, and 3.00(I) effects of obesity on respiratory impairments. Wright argues further that even if her individual conditions do not meet the listed impairment criteria, the combination of her impairments does amount to a listed impairment.

To constitute a listed impairment, the claimant's alleged disability "must meet all of the specified medical criteria." Jones, 364 F.3d at 504 (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). Where none of the claimant's individual conditions qualify as a listed impairment or equivalent, the ALJ must consider multiple impairments in combination. Gifford, 129 Fed. Appx. at 706 (citing  Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000)).

An "ALJ's bare conclusory statement that an impairment [does] not match, or is not equivalent to, a listed impairment [is] insufficient." Jones, 364 F.3d at 504 (citing Burnett, 220

F.3d at 119-20.[3] Rather, the Third Circuit "requires the ALJ to set forth the reasons for his decision." Burnett, 220 F.3d at 119 (citing Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981)). Where the ALJ fails to do so, the ALJ's determination is "beyond meaningful review" and should be vacated and remanded "for a discussion of the evidence and an explanation of reasoning supporting a determination that [claimant's] 'severe' impairment does not meet or is not equivalent to a listed impairment." Id. (quoting Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996)).

In addressing Wright's condition, the ALJ found that it did not meet any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. He noted specifically "that examining physicians have not reported findings, which would be equivalent in severity to the criteria of any listed impairment, including those specifically in Section 1.00 et.seq. [sic], Section 3.00 et.seq and Section 9.00 et.seq., of the Listing of Impairments." (Rec. 19.) The Judge provided no further explanation of his determination, nor is there any indication that he considered

_____

[3] In Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000), the Third Circuit reversed the ALJ's determination that the plaintiff's alleged disability did not meet a listed impairment because the ALJ's analysis was conclusory and inadequate, noting only that: "Although [plaintiff] has established that she suffers from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart P of Social Security Regulations No. 4." Id.

whether Wright's endometrial cancer constitutes a "distant metastases" of her breast cancer for the purposes of § 13.10. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ made no mention of Wright's obesity and did not address whether the combination of Wright's conditions could amount to a listed impairment.

The lack of analysis renders it impossible for this Court to conduct any meaningful review of the ALJ's determination that her condition does not amount to a listed impairment. Accordingly, the opinion below will be vacated and remanded for further consideration not inconsistent with this Opinion.

The accompanying Order shall issue today.


Dated: 5-22-06                           S/Robert B. Kugler
                                         ROBERT B. KUGLER
                                         United States District Judge

25